IN THE MATTER OF THE REPORT ON EXAMINATION OF HARDWARE MUTUAL INSURANCE COMPANY OF THE CAROLINAS, INC., AS OF DECEMBER 31, 1968

No. 78

(Filed 12 May 1971)

1. Insurance § 1— examination of insurance company — admission of incompetent evidence — harmless error

Where there was substantial and uncontradicted evidence to support the Insurance Commissioner's findings of fact upon a hearing on the report of examination of a fire and casualty insurance company, error, if any, in the admission of a Department of Insurance exhibit and of certain opinion testimony was harmless.

2. Insurance § 1— fire and casualty company — real property limitation — stock in subsidiary — unadmitted asset

Where a fire and casualty insurance company's investment of $160,000 in the common stock of its wholly owned subsidiary, whose sole assets consisted of real estate, office furniture and equipment used by the parent company, would have enabled the company to convert unadmitted assets into admitted assets and in so doing evade the 10% real property limitation, the investment was prohibited and was properly deducted from the company's assets as an unadmitted asset.

APPEAL by petitioner from Hall, J., October 5, 1970 Civil Session of WAKE Superior Court.

This is an action pursuant to the provisions of G.S. 58-9.3 to review a decision of the North Carolina Commissioner of Insurance rendered on 21 July 1970.

The petitioner appellant, Hardware Mutual Insurance Company of the Carolinas, Inc., is a domestic mutual insurance company insuring against fire and casualty losses. As of 31 December 1967 the petitioner had total admitted assets of $1,907,667.06, including its home office property in Charlotte valued at $178,554.28. At the time the company acquired the

home office property in 1955, it was in violation of the 10% limitation on real estate allowed by G.S. 58-79.1(e), but the Insurance Commissioner in office at that time allowed the company an exception to the statute or waived this requirement.

In January of 1968 the petitioner purchased all the assets, properties, and insurance business of Pathway Mutual Insurance Company of Florida for the sum of $285,282. Petitioner purchased all the stock of Pathway, consisting of 15,850 shares, for the sum of $25,000, and purchased the land and building, constituting the home office property of Pathway, for the sum of $151,467. These purchases were approved by the Commissioner of Insurance, but the petitioner did not get an additional waiver from the Commissioner in respect to the 10% limitation. On 11 November 1968 the Board of Directors of petitioner authorized the sale of all the petitioner's real estate at its approximate appraised fair market value and authorized the sale of all the petitioner's depreciable personal property at its approximate net book value. On 3 December 1968 HMC Corporation, a holding corporation, was incorporated as a *wholly owned* subsidiary corporation of the petitioner for the purpose of purchasing and holding the petitioner's real estate, office furniture and equipment. HMC Corporation had a three member Board of Directors, including Ralph Farmer, the president and a director of petitioner, and two other employees of petitioner. Ralph Farmer was also president of HMC Corporation.

On 11 December 1968 the land and building constituting petitioner's home office property in Charlotte was appraised for a market value of $345,000. On 27 December 1968 HMC purchased the petitioner's home office property for the sum of $325,000, after deducting the sum of $20,000 from the appraised market value for a realtor's fee. HMC Corporation further purchased the petitioner's office equipment and furniture for $34,740. The total sale price of the real estate and office furniture and equipment was $359,740. HMC Corporation paid petitioner $330,000 in cash and executed a promissory note for the balance in the amount of $29,740. At the time of the sale the petitioner's home office property had a net book value of $179,869, and the petitioner therefore realized a profit of $145,131. The petitioner realized a profit of $34,740 on the sale of the office furniture and equipment. Since this had not been carried as an admitted asset, the sale of the furniture and fixtures converted an unadmitted asset into an admitted asset.

On 27 December 1968 the petitioner purchased from HMC Corporation 5,000 shares of HMC's $10 per share common stock for the sum of $32 per share, for a total purchase price of $160,000. The petitioner then leased from HMC the home office building formerly owned by it for a monthly rental of $3,000 and leased the office furniture and equipment it formerly owned for a monthly rental of $1,000. In addition to the $160,000 which the petitioner paid to HMC, HMC financed the purchase of the real estate and office furniture and equipment by borrowing $172,500 from First Union National Bank.

Pursuant to the provisions of G.S. 58-16, on 22 September 1969 the Department of Insurance began an examination of the condition and affairs of the petitioner. The examination covered the period from 1 January 1966 through 31 December 1968. Examiners from the Insurance Departments of the States of South Carolina and Florida also participated in the examination. On 15 December 1969 the North Carolina Department of Insurance submitted its Report on Examination to the petitioner. This report determined that the petitioner's investment of the sum of $160,000 in the common stock of HMC Corporation constituted a prohibited investment under the provisions of G.S. 58-79.1(d)(8). This investment was therefore deducted from petitioner's assets as an unadmitted asset in accordance with G.S. 58-79.1(f).

On 2 January 1970 the petitioner appealed to the North Carolina Commissioner of Insurance and requested a hearing on the Report on Examination, under the provisions of G.S. 58-16.2. On 9 April 1970 the hearing was held. After reviewing and considering the evidence presented at the hearing, the Commissioner of Insurance upheld the Report on Examination. On 19 August 1970 the petitioner filed a petition for review of the Insurance Commissioner's decision in the Superior Court of Wake County. On 8 October 1970 the Superior Court entered judgment affirming the Commissioner's decision. The petitioner excepted to the court's judgment and appealed to the North Carolina Court of Appeals. The case comes to this Court under its general transferral order of 31 July 1970.

*Attorney General Robert Morgan and Assistant Attorney General Isham B. Hudson, Jr., for the Commissioner of Insurance, appellee.*

*Bailey & Davis by Gary A. Davis for the petitioner appellant.*

MOORE, Justice.

On appeal to this Court, petitioner presents the following questions:

"I.   Did the North Carolina Commissioner of Insurance commit prejudicial and reversible error in admitting into evidence North Carolina Department of Insurance Exhibit No. 8, the transcript of a conference held in the office of the North Carolina Commissioner of Insurance on October 31, 1969?

"II.   Did the North Carolina Commissioner of Insurance commit prejudicial and reversible error in admitting into evidence the opinion testimony of Charles F. Glover and George E. King, witnesses on behalf of the North Carolina Department of Insurance?

"III.   Is the decision of the North Carolina Commissioner of Insurance supported by substantial evidence?

"IV.   Are the findings and conclusions set forth in the decision of the North Carolina Commissioner of Insurance correct and in accordance with the applicable North Carolina insurance statutes?"

[1]   We do not deem it necessary to decide the first and second questions involved. Conceding *arguendo* that the admission of North Carolina Department of Insurance Exhibit No. 8 and the opinion testimony of Charles F. Glover and George E. King, admitted over petitioner's objection, was error, the error was harmless. There is ample substantial and uncontradicted evidence to support the Commissioner's findings of fact. G.S. 58-9.3 provides that on appeal to Superior Court the case is heard upon the transcript of the record for review of the findings of fact and errors of law only, and if the decision of the Commissioner of Insurance is supported by *substantial* evidence, "the decision is presumed to be correct and proper." The determinative questions then are: (1) Was there substantial evidence to support the Commissioner's findings of fact? (2) If so, did the Commissioner err in his conclusion of law that the $160,000 invested by petitioner in the common stock of HMC Corporation was not such investment as would constitute an admitted asset of the petitioner?

The answers to these questions require an examination and interpretation of certain provisions of Chapter 58 of the General Statutes relating to insurance as applied to the facts in this case.

Ralph N. Farmer, the president of both the petitioner and HMC Corporation, testified that HMC Corporation was a wholly owned subsidiary of petitioner, and that in December 1968 petitioner sold its home office building in Charlotte to HMC for $325,000 and sold its office furniture and fixtures to HMC for $34,740. After the sale of the Charlotte property, petitioner still owned the real estate which it had purchased from Pathway Mutual Insurance Company of Florida in 1968 at an actual cost of $151,467.40. At the time of the Pathway purchase, petitioner owned and was carrying as an admitted asset its real estate in Charlotte at a valuation of $179,869.

The Charlotte and Pathway real estate combined gave a total real property holding valued at $331,336.40. (According to the reappraisal of the Charlotte property, the combined total would have been $496,467.40.) As of 31 December 1967, petitioner's balance sheet showed admitted assets of $1,907,667.06. Ten per cent of the admitted assets would be $190,766.70. Clearly, the combined value of the Charlotte and Pathway real estate exceeded 10% of petitioner's admitted assets.

Petitioner contends that G.S. 58-79.1 (d) (4) allows it to hold the controverted stock. The statute in pertinent part reads:

" . . . Nothing contained in this subdivision shall be deemed to prevent any investment in the stock, bonds or other securities of a corporation organized exclusively to hold and operate real estate acquired by such insurer in accordance with and subject to the provisions of subsection (c), . . . "

This allows a company to invest in the stock of its wholly owned subsidiary *subject to the provisions of subsection (c) of G.S. 58-79.1*. Provisions (8) a and b are the parts of subsection (c) applicable to the case at bar.

G.S. 58-79.1 (c) (8) a and b states:

"(c) Classes of Reserve Investments.—The reserve investments of every domestic stock and mutual insurance

company, other than a life insurance company or a fraternal benefit association, shall consist of the following:

"(8) Real estate only if acquired or used for the following purposes in the following manner:

"a. The land and the building thereon in which it has its principal office or offices.

"b. Such as shall be requisite for its convenient accommodation in the transaction of its business."

This provides that a company's reserve investment can consist of real estate *but only* if used for the company's principal office or for its convenient accommodation in the transaction of its business.

*However,* specifically under subsection (e) of G.S. 58-79.1 a company cannot *even* acquire real property for the above purposes *if* the value of the acquired property, together with all the real property held by the company, exceeds 10% of its total admitted assets. G.S. 58-79.1(e) in pertinent part provides:

" . . . No domestic stock or mutual insurance company, other than a life insurance company or fraternal benefit association shall hereafter acquire any real property of the kind or kinds specified in paragraphs a and b of subdivision (8) of subsection (c), if the value of such real property, together with the value of all such real property then held by it, exceeds ten percentum of its total admitted assets except as more specifically provided in this section." (The exception provided for is not applicable to the present case.)

The 10% prohibition in G.S. 58-79.1(e) prevents G.S. 58-79.1(d)(4) from applying in the present case.

G.S. 58-79.1(f) provides that any mutual insurance company is required to dispose of any investment acquired in violation of the law, and the amount of the value of such investment in excess of the limitation shall be deducted as an unadmitted asset. This section in pertinent part is as follows:

" . . . [I]n any determination of the financial condition of any such insurer, the amount of the value of such investments, if wholly ineligible, or the amount of the value

thereof in excess of any limitation prescribed in this section, shall be deducted as an unadmitted asset of such insurer."

Further, G.S. 58-79.1 (h) (5) provides that the stock of a subsidiary of an insurer shall be valued on the basis of the value of only such of the assets of such subsidiary as would constitute lawful investments for the insurer if acquired or held directly by the insurer.

Mr. Farmer testified that as president of petitioner he had knowledge that petitioner's real estate holding exceeded the statutory limit of 10%, and that the office furniture and fixtures of petitioner had never been carried by petitioner as an admitted asset. Under G.S. 58-79.1 (f), the excess over the 10% real property limitation would be deducted as an unadmitted asset.

It should also be noted that the $160,000 investment in the common stock of HMC, which represented the ownership of real property, would together with real property still owned by petitioner also exceed the 10% limitation imposed by the statute.

Further, HMC's sole assets consisted of real estate and office furniture and fixtures which, if held directly by petitioner, would not have been admitted assets of the petitioner. Under the express terms of G.S. 58-79.1 (h) (5), the stock which petitioner held in its subsidiary, HMC, must be valued on the basis of the value of only such of the assets of such subsidiary as would have constituted lawful investment if acquired or held directly by the petitioner. In view of petitioner's other real estate holdings, none of the assets of HMC would constitute a lawful investment for petitioner. Hence, the stock in HMC would have no value as an admitted asset of petitioner.

[2]  For the reasons stated, we hold the Insurance Commissioner correctly concluded that petitioner's investment in the wholly owned subsidiary, HMC Corporation, would have enabled the petitioner to convert unadmitted assets into admitted assets, and in so doing evade the real property limitation provided by law for appellant insurance company. We further hold the Commissioner correctly concluded that under these circumstances it would not be in the public interest to consider the company's investment in its wholly owned subsidiary as an admitted asset.

The judgment of the Superior Court affirming the decision of the Commissioner of Insurance is proper and is hereby affirmed.

Affirmed.